UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2020 JUL 16 PM 1:25

CLERK

BY ____lAw____
DEPUTY CLERK

2:20-cv-101

| | |
|---|---|
| ALPS PROPERTY & CASUALTY INSURANCE COMPANY | ) ) |
| PLAINTIFF | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| UNSWORTH LAPLANTE PLLC; AND SETH SHERMAN, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF CONSTANCE SHERMAN | ) ) ) |
| DEFENDANTS | ) |

### COMPLAINT FOR DECLARATORY RELIEF

ALPS Property & Casualty Insurance Company ("ALPS") brings this diversity action for declaratory relief, pursuant to 28 U.S.C. §§ 2201(a) and 2202, and Fed. R. Civ. P. 57, concerning the applicability of certain policies of lawyers' professional-liability insurance, as described further below, to a claim arising from the defendant law firm's work on behalf of Constance Sherman.

### Parties

1. Plaintiff ALPS is an insurance company organized as a Montana corporation, with a principal place of business in Missoula, Montana. Since December 11, 2012, ALPS has been duly authorized by the State of Vermont to provide professional-liability insurance to lawyers in the state.

2. Defendant Unsworth LaPlante PLLC (hereinafter "the Law Firm") is Vermont law firm organized as a domestic professional limited-liability company, with a principal place of business at 26 Railroad Avenue, Essex Junction, Vermont. The Law Firm was previously known by the names Unsworth LaPlante PLC, Unsworth Law PLC, and UnsworthLaPlante PLC.

The members of the law firm include Stephen A. Unsworth and Ellen B. LaPlante, both of whom are Vermont lawyers who practice at the Essex Junction office of the Law Firm.

3. Defendant Seth Sherman is an individual who, upon information and belief, lives at 6 Birchwood Lane, Burlington, Vermont. Seth Sherman is the son of Constance Sherman, who, upon information and belief, died on August 3, 2016, in Vermont. On July 19, 2017, upon information and belief, Seth Sherman was appointed by the Putnam County, New York Surrogate's Court as Executor of the Estate of Constance Sherman.

## Jurisdiction and Venue

4. This Court has diversity subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(c), because the action is between citizens of different states—the plaintiff is a citizen of Montana, and the defendants are citizens of Vermont—and the amount in controversy exceeds the sum or value of $75,000.

5. This Court has personal jurisdiction over the defendants because they are residents of Vermont, and because this matter arises from legal services provided by the Law Firm in Vermont, and involves policies of professional-liability insurance issued to the Law Firm in Vermont.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), because all of the defendants reside in this District, and (b)(2), because a substantial part of the events giving rise to the claim occurred in this District.

7. There is an actual case or controversy between the parties as to whether the professional-liability insurance policies at issue may provide coverage for the underlying claims and potential claims described herein. The matter is ripe for adjudication.

## The Underlying Matter

8. Upon information and belief, Constance Sherman and Seth Sherman engaged the Law Firm in December 2015 to perform certain estate-planning work for Constance, including work related to the disposition, upon Constance's death, of property she owned in Garrison, Putnam County, New York ("the Garrison Property"). Upon information and belief, the Shermans and the Law Firm agreed that title to the Garrison Property should be promptly transferred from Constance Sherman to an *inter vivos* trust established to hold the asset, of which trust Seth Sherman would serve as trustee.

9. Upon information and belief, at the time of Constance Sherman's death in August 2016, Seth Sherman was engaged in efforts to sell the Garrison Property, believing that he was authorized to do so as trustee of the trust into which title to the property was to have been transferred. In or about October 2016, according to Mr. Sherman, a buyer expressed interest in purchasing the Garrison Property. However, Mr. Sherman says, he learned that, contrary to what he understood the Law Firm had agreed to do as part of its estate-planning work for Constance Sherman, title to the Garrison Property had not been transferred to the trust; rather, the property was still registered as owned by Constance. With Constance now deceased, therefore, in order to be able to sell the property, Mr. Sherman would have to first submit his mother's estate to the probate process in the Surrogate's Court, and await the Court's appointment of Mr. Sherman to serve as Executor, adding delay and extra cost to the process of selling the property.

10. Upon information and belief, in October 2016, Seth Sherman contacted the Law Firm to complain that the firm had not, as agreed in December 2015, transferred ownership of the Garrison Property from Constance Sherman to the trust prior to her death. A series of telephone and email communications took place between the Law Firm, Mr. Sherman, and the

New York lawyer who was representing him in connection with the planned sale of the Garrison Property.

11. As a result of these communications, on or about November 5, 2016, Law Firm partner Ellen LaPlante wrote to Seth Sherman: "I understand how frustrated you are with the situation at this point, and we would like to split your probate fees with you. Unsworth Law would pay half of the probate bill you received from the NY Attorney. I know there was a lot of miscommunication and we deserve some blame for that, so we would like to do this to attempt to rectify the issues you are dealing with."

12. Upon information and belief, Seth Sherman proceeded with the probate of his mother's estate, and was appointed executor of the estate in July 2017.

13. In September 2019, the Law Firm received a letter from an attorney representing Seth Sherman. The letter alleged that, as described above, Constance Sherman had engaged the Law Firm in December 2015 to provide estate-planning services. As part of these services, the letter alleged, ownership of the Garrison Property was to have been transferred from Ms. Sherman to a trust, "so that probate in New York could be avoided." But this had not been done prior to Ms. Sherman's death in August 2016. Seth Sherman had only discovered the problem, the letter said, in October 2016, when he attempted to sell the Garrison Property.

14. The September 2019 letter went on to describe Mr. Sherman's complaint to the Law Firm in October 2016, after he discovered that the transfer of title had not been completed. According to the letter, when Mr. Sherman contacted the Law Firm in October 2016, he was "informed [that] the drafting of the Deed" had been "tasked to a paralegal but was never completed." The letter cited the November 5, 2016 email in which the Law Firm offered to pay some of the fees for the probate process that the Law Firm's work had been intended to obviate.

The letter alleged that in addition to those fees, Mr. Sherman and Constance Sherman's estate had incurred additional costs and damages resulting from the Law Firm's alleged failure to transfer ownership of the property.

### The 2016-17 ALPS Policy

15. At the time the Law Firm was contacted by Seth Sherman and his real-estate lawyer in October 2016 about the discovery that ownership of the Garrison Property had not been transferred, the Law Firm was insured under a policy of lawyer's professional-liability insurance issued by ALPS, Policy No. 18800-1 ("the 2016-17 ALPS Policy"). The policy was a "claims-made-and-reported" policy, which provided coverage, under certain conditions, for claims that were first made against the Law Firm and first reported to ALPS during the policy period, which began on March 11, 2016 and ended on March 11, 2017.

16. At the top of the first page of the 2016-17 ALPS Policy, the policyholder was given the following caution (in which capitalization and bold type indicates terms defined in the "Definitions" section of the policy):

> THIS IS A "CLAIMS MADE AND REPORTED" INSURANCE **POLICY**. THEREFORE, AS A CONDITION PRECEDENT TO THE **COMPANY'S** OBLIGATION TO DEFEND OR INDEMNIFY THE **INSURED** UNDER THIS **POLICY**, THE **INSURED** MUST IMMEDIATELY REPORT ANY **CLAIM** TO ALPS DURING THE **POLICY PERIOD**.... NO COVERAGE EXISTS UNDER THIS **POLICY** FOR A **CLAIM** WHICH IS FIRST MADE AGAINST THE **INSURED** OR FIRST REPORTED TO THE **COMPANY** BEFORE OR AFTER THE **POLICY PERIOD**.... IF THE **INSURED** RECEIVES NOTICE OF A **CLAIM**, OR BECOMES AWARE OF AN ACT, ERROR OR OMISSION... THAT COULD REASONABLY BE EXPECTED TO BE THE BASIS OF A **CLAIM**, THEN THE **INSURED** MUST, AS A CONDITION PRECEDENT TO THE **COMPANY'S** OBLIGATION TO DEFEND OR INDEMNIFY ANY **INSURED**, IMMEDIATELY DELIVER A WRITTEN NOTICE DIRECTLY TO THE **COMPANY** VIA EMAIL, FACSIMILE, OR MAIL AT ANY OF THE FOLLOWING:

after which the policy provided email, fax, and mailing addresses for providing notice to ALPS.

17.     As indicated in the cautionary language quoted above, the "Insuring Agreements" section of the 2016-17 ALPS Policy provided that coverage would only be available for a policyholder's liability "arising from or in connection with A **CLAIM** FIRST MADE AGAINST THE **INSURED** AND FIRST REPORTED TO THE **COMPANY** DURING THE **POLICY PERIOD**."

18.     The 2016-17 ALPS Policy defined the term "Claim," in relevant part, to mean "a demand for money or services, including but not limited to the service of suit or institution of arbitration proceedings against the **Insured**."

19.     The 2016-17 ALPS Policy also provided as follows, with respect to a policyholder's obligation to timely report a potential claim:

> When an **Insured** becomes aware of an act, error or omission… that could reasonably be expected to be the basis of a **Claim**, but no **Claim** arising therefrom has yet been made, then as a condition precedent to the **Company's** obligation to defend or indemnify the **Insured** under this **Policy**, the **Insured** shall immediately give written notice to the **Company**….

20.     The 2016-17 ALPS Policy further provided as follows, with respect to the consequences of failing to report a claim or potential claim within the appropriate policy period:

> In the event an **Insured** fails to give written notice to the **Company** of a **Claim**, prior to the end of the **Policy Period** in which the **Claim** is made, or in the event an **Insured** fails to give written notice to the **Company** of a potential **Claim**, as described in [the provision quoted in ¶ 19 of this Complaint, *supra*], prior to the end of the **Policy Period** in which the **Insured** first becomes aware of the act, error, [or] omission…, then no coverage for any such **Claim** shall be afforded to the **Insured** under any future policy issued by the **Company**.

21.     The communications received by the Law Firm in October 2016 from Seth Sherman, and the lawyer representing him in the attempted sale of the Garrison Property, constituted a "Claim" within the meaning of the 2016-17 ALPS Policy; or, alternatively,

constituted notice to the Law Firm of an "act, error or omission that could reasonably be expected to be the basis of a Claim" within the meaning of the policy.

22. The Law Firm failed to give notice to ALPS, during the policy period of the 2016-17 ALPS Policy, concerning the Sherman Claim or potential Claim.

### The 2017-18 and 2018-19 ALPS Policies

23. During the period March 11, 2017 to March 11, 2018, the Law Firm was insured under another policy of lawyer's professional-liability insurance issued by ALPS, Policy No. 18800-2 ("the 2017-18 ALPS Policy").

24. During the period March 11, 2018 to March 11, 2019, the Law Firm was insured under another policy of lawyer's professional-liability insurance issued by ALPS, Policy No. 18800-3 ("the 2018-19 ALPS Policy").

25. The Law Firm did not give notice to ALPS, during the policy period of the 2017-18 ALPS Policy or the 2018-19 ALPS Policy, concerning the Sherman Claim or potential Claim.

26. Indeed, on three separate occasions, in February 2017, February 2018, and February 2019, the Law Firm submitted applications to ALPS on which the Law Firm was asked whether any claims had been asserted against the Law Firm that had not been reported to ALPS, and also asked whether any member of the Law Firm was aware of "any fact, circumstance, act, error, or omission that could reasonably be expected to be the basis of a claim… regardless of the merits of such claim?" As to both questions, on all three occasions in 2017, 2018, and 2019, the Law Firm answered "No." In signing the applications, Law Firm partner Stephen Unsworth attested that the information provided was "true and correct," and that the Law Firm understood

ALPS would rely on the information in providing insurance to the Law Firm. The Law Firm also confirmed its express understanding

> that the policy applied for is a 'Claims Made and Reported' policy. Therefore, the applicant must immediately report any claim to ALPS while the policy is in force. No coverage exists under the policy for a claim which is first made against the Insured or first reported to ALPS before or after the policy period or any applicable extended reporting period.....
>
> **FAILURE TO REPORT CLAIMS:** The failure to report any claims made against the applicant or any attorney in the applicant's firm under any current or previous insurance policy, or failure to reveal timely facts or circumstances which may give rise to a claim against current or prior insureds, may result in the absence of coverage for any matter which should have been reported or may result in the failure of coverage altogether.

### The 2019-20 ALPS Policy

27. During the period March 11, 2019 to March 11, 2020, the Law Firm was insured under another policy of lawyer's professional-liability insurance issued by ALPS, Policy No. 18800-4 ("the 2019-20 ALPS Policy").

28. Like the earlier policies, the 2019-20 ALPS Policy provided coverage only for a claim that was "FIRST MADE AGAINST THE **INSURED**... DURING THE **POLICY PERIOD**." The 2019-20 ALPS Policy had the same definition of "Claim" as the earlier policies.

29. The 2019-20 ALPS Policy further said that coverage for a claim would only be available if, "[a]t the **Effective Date** of this **Policy**"—that is, March 11, 2019—"no **Insured** knew or reasonably should have known or foreseen that the **Wrongful Act**" from which the claim arises "might be the basis of a **Claim**." The policy defined a "Wrongful Act," in relevant part, as "an actual or alleged... [a]ct, error or omission in **Professional Services** that were or should have been rendered by the **Insured**." "Professional Services" were defined in relevant part as

"services or activities... rendered solely to others as... [a]n **Attorney** in an attorney-client relationship...."

30. In September 2019, after receiving the letter described in Paragraph 13 above, the Law Firm notified ALPS of the Seth Sherman claim.

31. The Sherman claim was not "first made" against the Law Firm during the policy period of the 2019-20 ALPS Policy, because, as explained above, the claim had been made against the Law Firm during the policy period of the 2016-17 ALPS Policy.

32. Alternatively, as of the effective date of the 2019-20 ALPS Policy, March 11, 2019, the Law Firm knew or reasonably should have known or foreseen that the "Wrongful Act" on which the Sherman claim is based "might be the basis of a Claim." As such, no coverage is available for the claim under the 2019-20 ALPS Policy.

33. The Law Firm's failure to disclose the Sherman claim or potential claim to ALPS in response to questions posed on several applications provides an additional reason why coverage is barred under the 2019-20 ALPS Policy.

34. Other coverage issues further preclude coverage in whole or in part for the Seth Sherman claim.

### Claim for Declaratory Judgment

35. For the foregoing reasons, no coverage is available for the Sherman claim under the 2016-17 ALPS Policy, the 2019-20 ALPS Policy, or any other policy issued by ALPS. The Court should so declare.

36. ALPS is not obliged to defend or indemnify the Law Firm with respect to the Sherman claim. The Court should so declare.

*ALPS Property & Casualty Insurance Co.*
*v. Unsworth LaPlante PLLC*
Complaint for Declaratory Relief
Page 10 of 10

WHEREFORE, ALPS requests that the Court issue a judgment:

A. Declaring that no coverage is available for the Sherman claim under the 2016-17 ALPS Policy, the 2019-20 ALPS Policy, or any other policy issued by ALPS;

B. Declaring that is not obliged to defend or indemnify the Law Firm with respect to the Sherman claim;

C. Granting ALPS such other relief as justice may require.


July 15, 2020

                                       ALPS PROPERTY & CASUALTY INSURANCE CO.
                                       By Its Attorneys

                                       */s/ William L. Boesch*
                                       William L. Boesch
                                       SUGARMAN ROGERS BARSHAK & COHEN, P.C.
                                       101 Merrimac Street
                                       Boston, MA 02114
                                       617-227-3030
                                       boesch@sugarmanrogers.com